Bryan W. Goodman (#02055)
**GOODMAN & GOODMAN, PLC**
7473 E. Tanque Verde Rd.,
Tucson, Arizona 85715
Telephone: 520-886-5631
Court Documents: bwg@goodmanadvisor.com

Attorneys for Debtor

| | |
|---|---|
| In re:<br><br>Glen Halvorson, MD PLLC,<br><br>      Debtor. | Chapter 11 Proceeding<br><br>Case No.: 2:18-bk-13508-BKM<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING: (A) PAYMENT OF PRE-PETITION WAGES AND SALARIES TO EMPLOYEES; (B) WITHHOLDING AND PAYMENT PAYROLL TAXES** |

  Glen Halvorson, MD PLLC, the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case ("Debtor"), hereby submits this motion (the "Motion"), seeking entry of an order, pursuant to sections 105(a) and 507 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"): authorizing the Debtor to (i) to pay, in its discretion and subject to available funding, prepetition wages and salaries to its employees, (ii) to withhold and pay payroll taxes. In support of this Motion, the Debtor relies on the *Declaration of Glen Halvorson, MD in Support of First Day Motions* (the "Declaration"). In further support of this Motion, the Debtor respectfully submits as follows:

## Background

  1. On November 2, 2018 (the "Petition Date"), the Debtor commenced its case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code. The Debtor continued to operate its businesses and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtor's Chapter 11 Case.

2. The Debtor provides diagnostic testing and analysis to patients of referring treating physicians. Specifically, the Debtor provides electromyography (EMG) diagnostic procedures to assess the health of muscles and the nerves that control them. An EMG is often done in combination with a Nerve Conduction Study (NCS). Together the EMG and NCS tests analyze the electrical activity in nerves and help diagnose symptoms of: numbness, tingling, pain, weakness, or cramping.

3. As of the Petition Date, the Debtor employs five (5) employees ("Employees").

4. As of the Petition Date, Debtor was in the middle of pay period, which began on October 29, 2018 and continues through November 9, 2018. As a result, the pre-petition portion (the "Stub Period") of wages and benefits owed to Debtor's Employees is from October 29, 2018 through November 1, 2018.

5. For Debtor to operate, the Debtor requires ongoing employee participation and service. The Debtor must be able to pay certain pre-petition payroll obligations to its Employees to avoid disruption, preserve employee morale, avoid unnecessary turnover, and ensure that the Debtor's operations are maintained and maximized for the benefit of its creditors.

6. No single Employee is owed more than $12,850 for the Stub Period.

7. Debtor is not seeking authority to pay the insiders for the Stub Period through this Motion.

8. If the Employees are not paid their wages and allowed to receive the other benefits of employment, then they would experience hardship. Further, in order for the Debtor to retain the services of these Employees, and the Debtor must timely pay their wages and provide other employee benefits that are important to their retention.

**Relief Requested**

As of the Petition Date, the Debtor owed accrued and unpaid wages and salaries (collectively, the "Wage Claims") to its Employees. None of the Wage Claims are above the priority amount of $12,850 per Employee. The Debtor seeks to satisfy accrued pre-petition

obligations owing to individual Employees up to the statutory cap for Code § 507(a)(4) priority claims in the amount of $12,850. In connection with the Wage Claims, applicable law requires the Debtor to withhold from employee payroll checks certain of the Employees' obligations, including, without limitation: federal, state and local income taxes, Social Security, Medicare, and unemployment taxes.

The Debtor hereby requests authorization to pay, in its discretion, all unpaid Wage Claims that had accrued as of the commencement of these cases up to the statutory cap for priority claims in the amount of $12,850 per each Employee. Further, the Debtor requests authorization to make all such normal and customary deductions and withholdings and to pay all taxes and other obligations associated with the payment of the Wage Claims in the ordinary course of business.

Under the circumstances, the Debtor respectfully asserts that it is appropriate and necessary for the Court to authorize the Debtor to pay the Wage Claims as set forth herein. The payment of these obligations is justified under Code § 105 and the "doctrine of necessity," and the Wage Claims are accorded priority under Code §§ 507(a)(4) and (5). Code § 363(b)(1) authorizes the debtor-in-possession to "use, sell, other than in the ordinary course of business, property of the estate . . . ." Section 105(a) further permits courts to approve immediate payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of the pre-petition claims of employees. *See In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (authorizing payment of pre-petition wages, salaries, expenses and benefits); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (authorizing payment of pre-petition wages, salaries, reimbursable business expenses and health benefits). Moreover, courts have allowed immediate payment of certain pre-petition obligations under the "necessity of payment" doctrine. *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987).

Further, under Code § 507(a)(4), employees are granted a priority claim for: allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the

case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the Debtor'S business, whichever occurs first, for –

> (A) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual….

11. U.S.C. § 507(a)(4).

Here, the payment of the Wage Claims in accordance with the Debtor's pre-petition business practice is in the best interests of the Debtor, its estate, and its creditors. Paying the Employees is critical to enabling the Debtor to operate and maximize the value of its assets without undue disruption and unnecessary debilitating employee turnover. Any deterioration in the morale and loyalty of the Employees at the outset of the Case would adversely affect the Debtor's ability to maximize the value of its assets for the benefit of creditors. Finally, unless the Court approves the relief requested herein, the Employees will suffer an unnecessary and unwarranted hardship. The Employees obviously rely on their wages and benefits. Any interruption or disruption of payment of the Wage Claims could make it difficult for the Debtor to retain the Employees when their services are needed the most.

Because this Motion only seeks authorization to satisfy accrued Wage Claims owing to individual Employees within the statutory cap of $12,850, any payment of the Wage Claims does not prejudice the general unsecured creditors. In fact, to the extent that the payment of the obligations promotes the retention of Employees and preserves morale, payment of the Wage Claims should contribute to maximizing the value of the Debtor's estate for benefit of creditors.

## Conclusion

Based on the foregoing, the Debtor respectfully requests entry of an Interim Order in the form attached hereto, and a final order:

(a) Authorizing the Debtor, in its discretion, to pay and honor pre-petition wages owed to its Employees up to statutory maximum of $12,850.

(b) Authorizing the Debtor to make all normal and customary withholdings and deductions from wages and other compensation paid to the Employees and to pay all applicable taxes and other obligations normal associated with such payments;

(c) Setting a final hearing regarding this Motion; and

(d) Granting such further relief as is just and proper.

RESPECTFULLY SUBMITTED this 13th day of November, 2018.

/s/ Bryan W. Goodman
Bryan W. Goodman
**GOODMAN & GOODMAN, PLC**
Attorneys for Debtor

**E-FILED** on November 13, 2018 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have
appeared in the case.

**COPY** mailed the same date via U.S. Mail to:
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706
All parties on Debtors' Master Mailing Lists

**COPY** e-mailed the same date to:
Patty Chan, Trial Attorney
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003
Patty.Chan@usdoj.gov

**Exhibit "A"**

| | |
|---|---|
| In re:<br><br>Glen Halvorson, MD PLLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>Case No.: 2:18-bk-13508-BKM<br><br>**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING: (A) PAYMENT OF PRE-PETITION WAGES AND SALARIES TO EMPLOYEES; (B) WITHHOLDING AND PAYMENT PAYROLL TAXES** |

Upon consideration of the Emergency Motion for Entry of Order Authorizing: (A) Payment of Pre-Petition Wages and Salaries to Employees; (B) Withholding and Payment Payroll Taxes and Insurance Amounts; and ("Wage Motion") filed by the debtor-in-possession ("Debtor"); and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors and all other parties-in-interest; and the Court having jurisdiction to consider the Wage Motion and the relief therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Wage Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and for the arguments made by counsel at the hearing on _____, and good cause appearing, it is **ORDERED** that:

A. The Wage Motion is granted pursuant to the terms of this Interim Order on an interim basis.

B. A final hearing on the Wage Motion is scheduled for _____ ___, 2018 at __:__ a.m./p.m. ("Final Hearing"). Parties may appear in person at the U.S. Bankruptcy

Court at 230 N. First Ave., Courtroom 701, Phoenix, Arizona 85003. Any party in interest may file an objection to the relief sought in the Wage Motion on or before _____ ___, 2018 ("Objection Deadline").

C. The Debtor is hereby authorized to pay and honor pre-petition hourly wages, salaries, owed to their current employees, excluding any insiders, up to $12,850.00, and related taxes and other statutory obligations;

D. The Debtor is authorized to make all normal and customary withholdings and deductions from wages and other compensation paid to their employees and to pay all applicable taxes and other legal obligations associated with such payments.

**DATED AND SIGNED ABOVE**